IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ANTHONY MOORE, JR., #517882 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:10cv285 |
| RICK THALER, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Anthony Moore, Jr., a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on June 8, 2010. On September 9, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Administrator Ginger Lively, Assistant Warden Dwayne Dewberry and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff's lawsuit concerns problems that began with an incident at the Coffield Unit on September 12, 2009. The Plaintiff testified that he was attacked in a dayroom by inmate Fred Alexander. Alexander spit in his face, grabbed him around the neck and rammed his back into steel benches several times. The Plaintiff started to defend himself. Other inmates had to pull Alexander off of the Plaintiff. Sgt. Blink and five other officers came on the scene and asked what was going on. Several inmates told the officers that there was nothing wrong. The officers left the area. Alexander then left the dayroom and went to talk to Sgt. Blink. A few minutes later, officers came on the scene and removed the Plaintiff from the dayroom. The Plaintiff was examined by a nurse.

Sgt. Blink had the Plaintiff immediately confined in prehearing detention without all of his clothes. The Plaintiff was wearing only his t-shirt and gym shorts when he was placed in prehearing detention. The remainder of his clothes were still in the dayroom. He testified that he was confined in segregation for eighteen days without the rest of his clothes. He acknowledged that it was not cold during that time of the year, but he wanted the rest of his clothes.

The Plaintiff's primary complaint concerns the fact that he, as opposed to Alexander, received a disciplinary case for assaulting another inmate. More specifically, he was charged with assaulting inmate Alexander by grabbing him by the neck. He sued Officer McCalister, the charging officer, because he reported that he had seen the Plaintiff scratch Alexander and fight with him. He sued Captains Farquhar and Jefferies, who were the disciplinary hearing officers. Captain Farquhar initially presided over the hearing, and Captain Jefferies completed it. Captain Jefferies found the Plaintiff guilty. The Plaintiff's grievances challenging the decision were unsuccessful. The Plaintiff sued Warden Wisener for denying his grievance and erroneously characterizing the disciplinary charge as fighting, as opposed to an assault.

The Plaintiff's property was inventoried when he was placed in segregation. Administrative Segregation Property Officer Green was off at the time the property was inventoried. He came back to work two days later. He confiscated some of the property. The Plaintiff alleged in his original complaint that Green confiscated food that he had bought in the commissary, along with other property. Green never provided the Plaintiff with confiscation papers. The Plaintiff complained that Green did not follow prison rules requiring him to provide the Plaintiff with confiscation papers. The Plaintiff testified that he sued Warden Wheat for going along with Green's explanation and denying his grievance. The Plaintiff wrote an I-60 to Major Delarosa about his property, but Major Delarosa did not do anything to help him.

The Plaintiff further alleged in the original complaint under the heading of Major Delarosa that his custody level was changed from minimum custody to medium custody, which he characterized as retaliation.

While the Plaintiff was confined in segregation, he saw Nurse Morton and told her that his back was hurting. He asked her to schedule him to see Physician Assistant Nolen. She said she would place his name on the computer to see Nolen, but he never saw him. In the original complaint, he listed Nolen as a defendant. The Plaintiff testified that he did not intend to sue Nolen. Instead, his name was listed as a witness. The Plaintiff also indicated that he wanted to voluntarily dismiss Defendants Servin, Sage, Jackson and Gannon.

The Plaintiff testified that he was supposed to have several teeth pulled by Dr. Lawrence. While he was still confined in segregation, he was escorted to the dental lab, but the extraction had to be rescheduled. The Plaintiff complained that his teeth still have not been extracted. He added that the teeth are painful.

The Plaintiff's final claim concerned legal mail, which was already opened before it was delivered to him. He sued Mary Mancera because she was the person who delivered the opened legal mail on at least two occasions. He also sued an unidentified mail room supervisor. He complained that letters were returned to him from the mail room with a note that the mail that he had listed as legal mail was not, in fact, legal mail. The Plaintiff testified that he was trying to obtain help in the preparation of this lawsuit.

Warden Dewberry testified under oath that Code 21 makes it an offense for an inmate to assault another inmate or to fight with another inmate. The distinction that the Plaintiff was making between the terms assault and fighting was not significant for purposes of a Code 21 violation. The Court has reviewed TDCJ-CID's Standard Offense Pleadings Handbook, and Code 21 includes both assaulting or fighting with another inmate.

Regional Grievance Administrator Ginger Lively testified under oath that the grievance records reveal that the Plaintiff had exhausted his disciplinary and property claims. Nothing else that could be construed out of the facts of the case were exhausted, including his access to court and medical claims.

The Plaintiff finally testified that it was okay for the Court to review the certified and authenticated records submitted by Ms. Lively during the hearing. The disciplinary records for Case Number 20100012351 reveal that Officer McCalister prepared an Offense Report on September 12, 2009. He charged the Plaintiff with a Code 21 violation for assaulting inmate Alexander by grabbing him by the neck. The Disciplinary Report and Hearing Record reveals that the Plaintiff received written notification of the charges on September 15, 2009. A hearing was conducted on September 17, 2009. The Plaintiff was found guilty based on the charging officer's report and testimony. The

punishment imposed consisted of the loss of recreation and commissary privileges for 30 days, a reduction in classification and the loss of 30 days good time. Warden Wisener denied the Plaintiff's Step 1 grievance on October 21, 2009. C. Lawson denied his Step 2 grievance on November 13, 2009.

The Court's review of the medical records revealed that there are no medical records concerning the Plaintiff being injured in the altercation with inmate Alexander. On the other hand, Nurse Morton prepared several clinic notes on September 30, 2009. She provided hydrocortisone cream for a fungal infection, Naprosyn for musculoskeletal pain and aluminum/magnesium hydroxide for heartburn. She also referred his case to a medical provider regarding the fungal problem. Several members of the medical staff signed off on an evaluation clearing the Plaintiff for confinement in segregation on October 8, 2009. The medical records provided to the Court did not include any dental records.

Discussion and Analysis

The Plaintiff primary complaint concerns the disciplinary case filed against him. In his memorandum attached to his original complaint, he asked for compensatory and punitive damages. Because the Plaintiff seeks damages as a result of a prison disciplinary case where he lost good time, he cannot assert his due process claim in a 42 U.S.C. § 1983 action unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff has not shown that he has been able to get his disciplinary case reversed, expunged or otherwise declared invalid. Indeed, the grievance records reveal that the disciplinary case was upheld at both the Step

1 and Step 2 levels. The Plaintiff has not satisfied the requirements of *Edwards v. Balisok* in order to have him disciplinary case reviewed in a civil rights lawsuit. His claims about the disciplinary case should be dismissed.

The Plaintiff's claims about the disciplinary case should be dismissed for the additional reason that a protected liberty interest was not at stake. Relief is unavailable "absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)). The Supreme Court placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Supreme Court held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Court concluded that Conner did not have a "protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 958-59. The imposition of commissary and cell restrictions likewise will not trigger the protection of the

Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin*, 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison v. Parker*, 104 F.3d at 769.

In the present case, the prison records submitted at the *Spears* hearing reveal that the Plaintiff is in custody pursuant to a 1989 Robbery conviction and that he is not eligible for release on mandatory supervision. Indeed, he is ineligible for release on mandatory supervision in light of the statutory provision in effect at the time he committed the offense. Tex. Code Crim. Proc. 42.18 § 8(c)(10). Because he is not eligible for release on mandatory supervision, the Plaintiff's punishment did not trigger the protection of the Constitution. Neither civil rights nor habeas corpus relief is available in federal court concerning the disciplinary case. The Plaintiff's claims about the disciplinary case fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. His claims about the disciplinary case should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The next claim that was exhausted concerns the confiscation of the Plaintiff's property. A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate post-deprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide

an adequate state post-deprivation remedy for property taken from prisoners. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994). The Plaintiff complained that his property was confiscated without providing him with confiscation papers. The Fifth Circuit recently rejected an identical claim in *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). The Fifth Circuit reiterated the basic principle that a prison official's failure to follow prison policies, procedures or regulations does not constitute a violation of due process. *Id.* (citations omitted). Furthermore, "constitutional due process is satisfied because the Texas tort of conversion provides [the plaintiff] with an adequate post-deprivation remedy." *Id.* The Plaintiff's claims about the confiscation of his property do not state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The property claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Regional Grievance Administrator Ginger Lively testified that none of the Plaintiff's other claims were exhausted. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court subsequently reiterated that exhaustion is mandatory and will not be excused when

an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 83. The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has added, however, that after *Jones v. Bock*, a complaint is still subject to dismissal when it is evident that a prisoner failed to exhaust his administrative remedies. The Plaintiff's remaining claims should be dismissed for failure to exhaust administrative remedies.

Despite the Plaintiff's failure to exhaust his remaining claims, the Court will examine the merits of the claims. In his complaint, he alleged that the Defendants were guilty of failing to protect him. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the present case, the Plaintiff has not shown that anyone knew of and disregarded an excessive risk to his health or safety. The fight involving Alexander happened spontaneously. The Plaintiff has not shown that he nor anyone else knew that the fight was going to occur before it happened. He has not shown that anyone was deliberately indifferent by knowing about and disregarding the threat posed to him by Alexander. The failure to protect claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that he was the victim of retaliation. He did not develop the claim at the *Spears* hearing. In his memorandum, he alleged in support of a retaliation claim that he had some legal issues that need to be raised in a civil rights lawsuit, particularly about the conditions in prison. He did not elaborate on the claim. He also asserted that unidentified prison officials plotted to have another inmate, presumably Alexander, attack him.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington*

*v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988).

In the present case, the Plaintiff failed to show that he engaged in a specific constitutional right which led someone to retaliate against him. Moreover, he has not shown that anyone prompted Alexander to attack him. He presented only vague and conclusory allegations of retaliation, which are not sufficient to state a claim. The retaliation claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that he was forced to stay in segregation for eighteen days wearing only his t-shirt and gym shorts. He was not provided a full uniform. He was not wearing a full uniform because he had removed the remainder of the uniform in the dayroom.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. On the other hand, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* The "Constitution does not mandate comfortable prisons." *Id.* at 349. At the same time, in order to state a cognizable claim, a prisoner must allege facts showing that jail officials

11

acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. 294, 302-303 (1991); *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991). Finally, in order to state a claim, a prisoner must allege facts showing that he received more than a *de minimis* injury due to conditions. *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003).

The Fifth Circuit has considered a variety of cases which illustrate the type of conditions that are necessary to be considered cruel and unusual. In *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983), the Court held that allegations of a cold, rainy, roach-infested jail cell, with inoperative toilet facilities stated a cause of action. Similarly, allegations of cold cells with rats crawling all over prisoners state a cause of action. *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987).

In the present case, the fact that the Plaintiff was confined in segregation for eighteen days in September wearing only a t-shirt and gym shorts does not by any measure support a claim of cruel and unusual punishment. The claim fails to state a claim upon which relief may be granted, is frivolous in law and fact, and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that after the altercation and disciplinary proceeding his custody level was changed from minimum custody to medium custody by Major Delarosa. Prison systems have broad discretion in the classification of inmates, and the federal courts will not interfere with classification decisions except in extreme circumstances. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971). Inmates have neither a protectable property nor liberty interest in custodial classification. *Moody v. Baker*, 857 F.2d 256 (5th Cir.), *cert. denied*, 488 U.S. 985 (1988). Absent evidence of abuse, the classification of prisoners is a matter left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990).

The Plaintiff has not shown a basis for a potentially meritorious civil rights lawsuit because his custody level was changed from minimum custody to medium custody after officials concluded that he assaulted inmate Alexander. The claim fails to state a claim upon which relief may be granted, is frivolous in law and fact, and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is noted that the Plaintiff characterized Major Delarosa's actions as retaliation, but he failed to show how the classification decision constituted retaliation.

The Plaintiff also complained that Nurse Morton failed to place his name in the computer to see Physician Assistant Nolen. It is noted, however, that the clinic notes reveal that she made a referral to a medical provider. He also complained about the extraction of his teeth being delayed.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d at 1244. The standard previously discussed in conjunction with the Plaintiff's failure to protect claim also applies to medical claims. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff

> must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). The Plaintiff has not shown that Nurse Morton or Dr. Lawrence were deliberately indifferent to his serious medical needs. He has not shown, for example, that they refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct. Indeed, the records reveal that Nurse Morton treated him for several problems and referred him to a medical provider. It is noted that a Court may consider the medical records presented at a *Spears* hearing to determine that the quality or nature of medical treatment did not amount to deliberate indifference. *Varnado v. Collins*, 920 F.2d 320 (5th Cir. 1991).

With respect to Dr. Lawrence, it also appears that the Plaintiff's primary claim is that the extraction of his teeth has been delayed. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Plaintiff has not alleged facts showing that Dr. Lawrence has been deliberately indifferent. Moreover, he likewise failed to show that he experienced substantial harm due to deliberate indifference, although he has had to endure painful teeth. The medical claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The medical claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about his legal mail. In particular, he complained that legal mail was delivered to him after it had already been opened for inspection. The claim is frivolous.

14

*Brewer v. Wilkinson*, 3 F.3d 816, 826 (5th Cir. 1993); *Sanders v. Klinger*, 100 Fed. Appx. 957 (5th Cir. 2004). Also returning mail that had irregularities with the address on the envelope does not violate the Constitution. *See Jones v. Mail Room Staff*, 74 Fed. Appx. 418 (5th Cir. 2003).

The Plaintiff's claims about his legal mail are frivolous for the additional reason in that he failed to show harm. To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In *Lewis v. Casey*, the Supreme Court stated that an inmate must show more than the inability to file a claim in order to succeed on an access to court claim; instead, he must show that he would have been able to bring a nonfrivolous claim with arguable legal merit -- he must show an actual injury. 518 U.S. at 351-53. In the present case, the Plaintiff testified that he was sending out legal mail in an effort to get help with this lawsuit. Nonetheless, he has been able to file the lawsuit, and he has not shown that he was thwarted in bringing a nonfrivolous claim to the attention of the Court.

Finally, in his original complaint, the Plaintiff made vague allegations of a conspiracy. To show a conspiracy, a plaintiff must prove an actual deprivation of a constitutional right. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). *See also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 28 U.S.C. § 1983. *See Marts v.*

15

*Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*). The Plaintiff has not shown that he was a victim of conspiracy. This claim, like all of the previous claims, fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

One last matter to consider is the Plaintiff's assertion that he was not suing Nolen, Servin, Sage, Jackson and Gannon. His assertion is construed as a motion to voluntarily dismiss these individuals as defendants. A plaintiff is entitled to voluntarily dismiss a case before the opposing party serves either an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). The Defendants have not filed an answer or any other responsive pleading in the case. The motion to dismiss should be granted. It is accordingly

**ORDERED** that the Plaintiff's claims against Nolen, Servin, Sage, Jackson and Gannon are **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). It is further

**ORDERED** that the Plaintiff's claims against the remaining Defendants are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **10** day of **September, 2010.**

*[signature]*
_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE